IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA
Plaintiff
vs
JIMMY CORREA-MARTINEZ
Defendant

CRIMINAL 05-0151CCC

**O R D E R**

Before the Court is defendant's Motion, supported by a memorandum and a neuropsychological evaluation prepared by Dr. María T. Margarida, for a § 5K2.13 departure based on diminished capacity (**docket entry 35**). Defendant was charged and pled guilty pursuant to a plea agreement to a two-count Indictment for events occurring on April 23, 2005, specifically for possession with intent to distribute cocaine and for importation of cocaine into the United States from Jamaica and the Netherlands Antilles. The version of facts that is an integral part of the Plea Agreement (docket entry 30)[1] describes the circumstances of the offenses as follows: defendant Correa arrived on April 23, 2005 at the port of San Juan from the Netherlands Antilles on board the motor vessel Horizon. He was traveling accompanied by another passenger, not indicted, Julián Pérez-Mejías. Both passengers were led to an inspection area, questioned, and, due to their conflicting answers, alerted Customs and Border Patrol Agents to suspect illegal activity. During a secondary inspection of defendant Correa's luggage, the officer's found two five-liters mini-

---

[1] As the transcript of the sentencing hearing reflects, the government, pursuant to its Plea Agreement with defendant, had recommended at the initial sentencing hearing the lower end of the 70 to 87 months guideline sentencing range based on a total offense level of 27. However, the Pre-Sentence Report had included a minor role adjustment which reduced the total offense level to 23 and the guideline sentencing range to 46-57 months. Although the government was insisting on a 70-month term of imprisonment when it recommended a sentence at the lower end of the guideline range, the guideline range that was being considered by the Court based on the PSR calculations was 46-57 months. The Court imposed a sentence at the higher end of that range.

kegs of "Grolsch" beer which tested positive for cocaine. The version of facts concludes by stating that "defendant admitted that the luggage and mini-kegs belonged to him and that he was bringing them (the mini kegs) to a friend." Other than this brief description of defendant's involvement, there are no further details in the record regarding the circumstances of the offense. The Pre-Sentence Report (PSR) and the change of plea dialogue mirror the version of facts of the Plea Agreement.

Defendant claims in his 5K2.13 motion that he "as a result of brain injury, did not start out with the same capacity at the time of this undertaking." Memorandum, at p. 6. Dr. Julia's Report mentions, at page 3, that he had a history of traumatic brain injury in 1980 following a car accident. Other than these two references, there is no medical evidence that would establish that Mr. Correa suffers from any permanent brain damage or that he suffered a traumatic brain injury in the year 1980. He was 22 years old when he suffered the automobile accident in 1980. He was 47 years old at the time of the commission of the offense. His employment record, as informed in the PSR, reflects a stable occupational history as a factory operator, heavy machine operator and truck driver. He held the last occupation until the date of his arrest, earning $1600.00 monthly.

The neuropsychological evaluation includes quantitative test findings which reflect a verbal IQ of 94, performance IQ of 73, and a total IQ of 84. The report indicates average performance in verbal comprehension, an intact fund of information, polished vocabulary, and a borderline level in perceptual organization, working memory, mild limitation in logical memory and delayed visual memory. There is a finding that "in general brain impairment was found with respect to the various processes involved in memory, such as with the ability to sustain information in mind . . . (working memory), the consolidation process as well as encoding of new information, and the retrieval as well as storage of information." Report, at p. 10. Regarding the process of decision-making, there were findings of moderate impairment when processing visual and verbal information. The report contains a conclusion at page 12 in the sense that "although Mr. Correa may demonstrate adequate verbal abilities and has an intact fund of information, his reasoning and judgment with respect to the global analysis and inference of the information being processed is highly compromised and deficient and may lead to impaired decision making, planning and

execution of an action plan." Report, at pp. 12-13.  The psychologist observes at page 14 that defendant's "neuropsychological status reveals a diminished capacity."

Section 5K2.13 provides: "A downward departure may be warranted if (1) the defense committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense."

Regarding the first prong of the diminished capacity guideline, Application Note 1 explains that "'[s]ignificant reduced mental capacity means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."  A careful review of the observations of the psychologist and the test findings set forth in her evaluation lead us to conclude that defendant did not suffer from a significant reduced mental capacity.  The Report does not contain information that would support a finding that Mr. Correa was significantly impaired in his ability to understand the wrongfulness of the conduct constituting the offenses or to exercise the power of reason.  Nor was there any evidence that he could not control behavior that he knew was wrongful.  The inferences that can be made from the version of facts is that the drug offenses were carefully planned by him as evidenced by his purchasing tickets for himself and a companion on a cruise that took him to the Netherlands Antilles where he obtained the cocaine that he imported into Puerto Rico on April 23, 2005.  The drugs were concealed in beer kegs. Choosing transportation by means of a cruise ship and utilizing beer kegs to hide the cocaine in liquid form shows that he utilized the power of reason in planning the importation scheme and also denote his awareness that he was committing a criminal offense.  There is no evidence that this defendant was unable to control his behavior.  This is not a situation where impulsive behavior catapulted the defendant into the commission of the offenses.  He took his time to buy the cruise tickets, traveled abroad, obtained the drugs, concealed the drugs and returned to Puerto Rico. The Court concludes that the passing remark made by Dr. Margarida regarding a "diminished capacity" does not fall within the meaning of a significantly reduced mental capacity required in the first prong of Guideline section 5K2.13.

Having found that the first prong of § 5K2.13, the Court understands that a downward departure under § 5K2.13 is not warranted. Alternatively, had he complied with the first requirement, defendant has failed to establish that a significantly reduced mental capacity contributed substantially to the commission of the drug offenses. All that defendant has raised regarding the second prong are conclusory statements in his motion for downward departure, without any supporting evidence. For example, he avers at page 6 of the memorandum of law that his diminished mental capacity was the determining factor in the commission of the offense. This is followed by the following rhetorical question: why else would an otherwise law abiding man embark on a fool's venture and pay for his own ticket to pick up drugs during a Caribbean cruise? Again referring to the nexus between a significantly reduced mental capacity and the offenses, defendant argues that if his decision-making process is flawed, how can he be expected to make the right decisions concerning whether or not to engage in criminal conduct? The first characterization as a law abiding man embarking on a fool's venture to pick up drugs is a self-serving characterization lacking any factual analysis to establish the linkage between the alleged diminished mental capacity and the offenses. Regarding his claim of a flawed decision-making process, the mental evaluation, taken in the light most favorable to defendant, does not establish a decision-making process so impaired that it substantially contributed to his involvement in the criminal conduct charged. This is an individual with normal intelligence who has had no need for psychological or psychiatric treatment since the year 1980 when he suffered severe injuries in a car accident, who contrary to what is claimed was able to plan and to execute his action plan regarding the drug trafficking offenses. It was a well thought-out plan, which would have succeeded had it not been for the suspicion sensed by the law enforcement officers at the time that he was to walk away from the pier with the concealed cocaine, thereby fulfilling his criminal scheme.

For the reasons stated, the Court DENIES the Motion Requesting Downward Departure and/or Variance Under Guideline 5K2.13 and/or Variance Under 18 U.S.C. 3553(a) (**docket entry 35**).

SO ORDERED.

At San Juan, Puerto Rico, on August 15, 2007.

                                                S/CARMEN CONSUELO CEREZO
                                                United States District Judge